UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LAURIE D.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:20-cv-831 (RDA/TCB) |
| | ) |
| ANDREW M. SAUL, *Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g), Laurie D. ("Plaintiff") seeks judicial review of the final administrative decision of Andrew M. Saul, the Social Security Commissioner ("Defendant"), finding that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II. For the reasons articulated below, pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned U.S. Magistrate Judge recommends that the Court deny Plaintiff's motion for summary judgment (Dkt. 15); grant Defendant's cross motion for summary judgment (Dkt. 18); and affirm Defendant's final decision.

### I. PROCEDURAL BACKGROUND

**A.   Social Security Action**

Plaintiff protectively filed her application for DIB on June 22, 2015, alleging disability beginning on May 8, 2015. (R. at 303-04.) Defendant first denied Plaintiff's claim on August 17, 2015, and then again on reconsideration on November 25, 2015. (R. at 169-71, 177-79.)

---

[1] To protect Plaintiff's privacy, this Report and Recommendation uses only her first name and initial of her last name.

After Plaintiff's timely request for a hearing in front of an administrative law judge ("ALJ"), ALJ M. Krasnow held a hearing on November 2, 2017. (R. at 76-121.) At the hearing, Plaintiff (represented by Andrew Mathis) and impartial vocational expert Charlotte Dixon, Rh.D. testified. (R. at 77.) ALJ Krasnow issued a decision rendering Plaintiff not disabled on February 16, 2018. (R. at 149-60.)

Plaintiff appealed ALJ Krasnow's determination and the Appeals Council remanded Plaintiff's case back to the ALJ on January 9, 2019 to address evidence erroneously marked as duplicative and to "take any further action needed to complete the administrative record." (R. at 164-67.) ALK Krasnow held another hearing on August 13, 2019 and issued a decision on August 28, 2019 again finding Plaintiff not disabled. (R. at 12-29, 36-74.) Plaintiff (represented by Mr. Mathis) testified again, as well as independent vocational expert Edith Edwards. (R. at 36-74.) Plaintiff timely appealed the ALJ's decision, but the Appeals Council denied Plaintiff's request for review on May 19, 2020, making the decision final. (R. at 1-4.)

**B.     The Instant Action**

Plaintiff sought review of Defendant's decision by filing a complaint in this Court on July 22, 2020. (Dkt. 1.) Plaintiff alleges that "the denial of her disability claim is not supported by substantial evidence . . . including the weight of the evidence[,] her credibility, the medical opinions of her doctors, and any and all other applicable evidentiary issues, both in law and fact, and therefore the denial of her claim should be reversed or remanded for further administrative proceedings." (Dkt. 1 ¶ 6.) Defendant filed a timely answer on March 15, 2021. (Dkt. 11.) Defendant also filed the certified Administrative Record under seal, pursuant to Local Civil Rules 5(B) and 7(C)(1) on that same day. (*See* Dkt. 12.)

After the Court entered a briefing schedule (Dkt. 14), Plaintiff filed her initial motion for

summary judgment and supporting memorandum ("Pl's Mem. Supp.") on April 12, 2021 (Dkts. 15, 16) and Defendant filed its cross motion for summary judgment and supporting memorandum ("Df's Mem. Supp.") on May 12, 2021 (Dkts. 18, 19). Both Plaintiff and Defendant waived oral argument on their respective motions for summary judgment. (*See* Dkts. 17, 21.) Plaintiff filed her reply ("Reply") to Defendant's motion for summary judgment on May 26, 2021. (Dkt. 22.) Accordingly, this matter is now ripe for disposition.

## II. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of Defendant's final decision is limited to determining whether the ALJ's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 340 (4th Cir. 2012).

Substantial evidence has long been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Put another way, substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). In reviewing for substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). The Court must defer to Defendant's decision "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). The correct law to be applied includes the Social Security Act, its implementing regulations, and controlling case law. *See Coffman v. Bowen*, 829 F.2d 514, 517-18 (4th Cir. 1987).

While the aforementioned standard of review is deferential, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision. *See id.* at 517. With this standard in mind, the undersigned evaluates the ALJ's findings and decision.

### III. THE ALJ'S DECISION

The first issue before the ALJ was whether Plaintiff was disabled under sections 1614(a)(3)(A), 216(i), and 223(d) of the Social Security Act. An ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine a claimant's eligibility.[2] The Court examines this five-step process on appeal to determine whether the correct legal standards were applied in this case, and whether Defendant's resulting decision is supported by substantial evidence in the record. 20 C.F.R. §§ 404.1520, 416.920. In accordance with the five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law.

*Step One*. At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 8, 2015, the alleged onset date. (R. at 17.)

*Step Two*. At the second step, the ALJ found Plaintiff's CREST syndrome, affective disorder, anxiety disorder, somatoform disorder, posttraumatic stress disorder, and substance abuse disorder were severe impairments. (R. at 17.) The ALJ also considered Plaintiff's migraine prophylaxis and fibromyalgia but concluded that the medical evidence did not prove these to be severe impairments. (R. at 17-18.)

---

[2] Specifically, "[t]he ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015).

*Step Three*. Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met, or medically equaled, the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. at 18-20.) In examining Plaintiff's mental impairments under the paragraph B criteria, the ALJ found that Plaintiff experienced only "mild" to "moderate" limitations. (R. at *id*.) Accordingly, the ALJ found that Plaintiff was not disabled.

Between steps three and four, the ALJ is required to consider a claimant's residual functional capacity (RFC) pursuant to 20 C.F.R. § 416.920(e), or a claimant's ability to perform physical and mental work activities on a sustained basis, despite any limitations from impairments. Here, the ALJ found that Plaintiff had the RFC to perform "light work as defined in 20 C.F.R. §§ 404.1567(b)." (R. at 20.) The ALJ did, however, note the following limitations:

> [T]he claimant could occasionally push or pull bilaterally with the upper extremities, frequently handle, finger, and feel bilaterally, must avoid concentrated exposure to hazards such as moving machinery or unprotected heights, can occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, or crawl, is limited to jobs involving simple, routine, repetitive tasks, with no production rate for pace of work, and occasionally interacting with coworkers and the general public

(R. at 20.)

*Step Four*. In analyzing the fourth step, the ALJ found that Plaintiff is unable to perform her past relevant work as a hairstylist and small business owner. (R. at 26.)

*Step Five*. Finally, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are other jobs that exist in significant numbers in the national economy that she could perform. (R. at 27-28.)

Additionally, the ALJ concluded that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. (R. at 17.)

Ultimately, the ALJ concluded that Plaintiff was not under a disability within the

5

meaning of the Social Security Act from May 8, 2015 (the alleged onset date) through August 28, 2019 (the date of the decision). (R. at 15, 28.)

## IV. ANALYSIS

Plaintiff raises two points of error in her motion for summary judgment to support her contention that Defendant's final decision is unsupported by the substantial evidence. According to Plaintiff, she is entitled to remand or reversal because: (1) the ALJ failed to properly evaluate the opinions of the state agency physicians (Pl's Mem. Supp. at 7-13); and (2) the ALJ improperly dismissed the opinions from her treating psychiatrist and rheumatologist indicating that she would be excessively absent from a job (Pl's Mem. Supp. at 13-19). Defendant, however, contends that the ALJ's evaluation of the state agency psychologists' opinions is supported by the substantial evidence in the record and that the absenteeism opinions are not supported by the medical record. (Df's Mem. Supp. at 11.) Upon review of the ALJ's decision and the record, the undersigned agrees with Defendant.

### A. Correct Legal Standard

As an initial matter, in reviewing the record, the ALJ clearly applied the correct legal standard. As noted above, the ALJ addressed, as appropriate, each part of the five-step sequential evaluation analysis prior to reaching a decision. *See supra* Part III. The ALJ summarized the applicable standard in detail and then applied that standard faithfully to the facts of the case. (R. at 16-28.) Accordingly, the ALJ made no clear error of law in this regard.

### B. The ALJ Properly Evaluated the State Agency Physicians' Opinions

Plaintiff argues the ALJ erred in according little weight to state agency physicians Dr. Richard Surrusco's and Dr. Paula Nuckols' opinions on her manipulative limitations, but greater weight to other portions of their opinions. (Pl's Mem. Supp. at 7-13.) The undersigned evaluates

Plaintiff's contentions below and concludes that the ALJ's conclusions are supported by the substantial evidence in the record.

The question over the weight to be assigned to state agency consultant findings speaks to the ultimate determination of Plaintiff's RFC. After step three of an ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1), 416.902(e)-(f), 416.945(a)(1). In analyzing a claimant's RFC, an ALJ must assess the nature and extent of the claimant's mental limitations, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting," and then determine the claimant's RFC for work activity on a regular and continuing basis. *Id.* §§ 404.1545(c), 416.945(c). Opinions by medical professionals, whether "acceptable medical sources" or "other sources," are one type of evidence that an ALJ is to consider in determining a claimant's RFC. *Id.* § 404.1527(b).

When the opinions by medical professionals are inconsistent with each other or with other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. §§ 404.1527(c)(2)-(6), (d), 416.927(c)(2)-(6), (d); SSR 06-03p, 2006 WL 2329939, at *5. Only opinions from treating physicians may be given controlling weight. *See* 20 C.F.R. § 404.1527(c)(2). If an opinion is not given controlling weight as a treating source's opinion, the Social Security regulations require that certain factors be considered to determine the weight given to the medical opinion, as required of all other medical opinions: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) any other factors that tend to support or contradict the medical opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); S.S.R. 96-2p, 1996 WL

324188, at *4. An ALJ is not required to explicitly analyze each of the aforementioned factors if she is clear in her conclusions as to which factor resulted in less weight for the opinion at question. *Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam) ("While the ALJ did not explicitly analyze each of the . . . factors on the record, the ALJ was clear that he concluded that the doctor's opinion was not consistent with the record or supported by the medical evidence, which are appropriate reasons."). Under the substantial evidence standard, this Court generally will not disturb the weight an ALJ affords to a medical opinion. *Dunn v. Colvin*, 607 F. App'x at 267.

In reviewing state agency consultant reports, an ALJ "is not required to adopt any prior administrative medical findings, but she must consider this evidence according to §§ 404.2520b, 404.1520c, and 404.1527, as appropriate, because [the] Federal or State agency medical or psychological consultants are highly qualified experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1). This section allows an ALJ to consider "any other factors that tend to support or contradict the medical opinion" in addition to those enumerated factors above. 20 C.F.R. § 1527(c)(6). The statute prescribes a deferential standard that gives the undersigned relatively little power to disturb the weight the ALJ gives to a particular medical provider, unless the ALJ fails to give a sufficient reason for the weight afforded. *See Dunn v. Colvin*, 607 F. App'x at 267.

Dr. Surrusco and Dr. Nuckols examined Plaintiff in August 2015 and November 2015, respectively. (R. at 124-32, 137-44.) Both doctors concluded that Plaintiff was not disabled, though they determined that Plaintiff had the following impairments: diffuse diseases of connective tissue, migraine, fibromyalgia, other disorders of gastrointestinal system, somatoform disorders, and substance addiction disorders (Dr. Nuckols only). (R. at 126, 138.) They limited

8

Plaintiff to light work and determined that she could occasionally lift and/or carry twenty (20) pounds, frequently lift and/or carry ten (10) pounds; stand, walk, or sit for about six (6) hours in a normal eight (8)-hour workday; and occasionally push/pull hand controls. (R. at 128-31, 140-43.) As for postural limitations, both state agency consultants opined that she could balance without limitation, frequently kneel, and occasionally crawl, but could never climb ladders, ropes, or scaffolds. (R. at 129, 141.) Dr. Surrusco further found that Plaintiff could climb ramps and stairs, stoop, and crouch without limitation. (R. at 129.) And, Dr. Nuckols found that she could frequently climb ramps and stairs, stoop, and crouch. (R. at 141.) In evaluating Plaintiff's manipulative limitations, the State Agency Consultants determined that she could reach in any direction without limitation but was limited to occasional handling (gross manipulation), fingering (fine manipulation), and feeling (skin receptors). (R. at 129, 141.)

      In granting "partial weight" to the state agency physicians, ALJ Krasnow explained:

> [T]he undersigned gives partial weight to the State Agency consultants who opined that the claimant could perform light work with postural and manipulative limitations. The undersigned gives greater weight to their assessment of a range of light work because they explained their opinion thoroughly, using program knowledge, medical expertise, and evidence available to them. However, the undersigned finds lesser manipulative limitations than the consultants identified because of evidence received at the hearing level, including testimony describing significant hand use with activities of daily living and objective findings of intact upper extremity strength. Even so, the undersigned gives great weight to this opinion to the point that it evidences the above residual functional capacity and ultimate finding of not disabled.

(R. at 25.)

      The ALJ was not required to give controlling weight to Dr. Surrusco's and Dr. Nuckols' opinions because they served as consultative examiners, not as Plaintiff's treating physicians. *See Cook v. Astrue*, No. 2:10-cv-87, 2011 WL 719008, at *30 (N.D.W. Va. Jan. 28, 2011). Therefore, the ALJ only needed to consider their opinions in light of the various factors outlined above. While the ALJ did not go through every specific factor, he did make clear that he was

9

assigning only partial weight to the manipulative limitations opinions because they were inconsistent with Plaintiff's hearing testimony and activities of daily living. *Bishop*, 583 F. App'x at 67. Further, the ALJ devoted nearly six pages discussing Plaintiff's medical and nonmedical evidence in detail in assessing the RFC. (R. at 20-26.). Consequently, it is apparent that the ALJ considered the consultative examiners' opinions in context of the entire record. *See Coulbourne v. Colvin*, No. 2:13-cv-97, 2014 WL 3904251, *13-14 (E.D. Va. Aug. 7, 2014) (holding that the ALJ's decision to afford less weight to Plaintiff's doctors was not conclusory despite the ALJ's lack of citation to medical evidence in the weight determination paragraph).

According to Plaintiff, the ALJ's decision to give "greater" weight to the state agency consultants' exertional and postural limitations and "lesser" weight to their manipulative limitations "is both internally inconsistent and contrary to the record." (Pl's Mem. Supp. at 9; Reply at 1.) Additionally, Plaintiff argues that the state agency consultants adequately explained their manipulative limitations, so the ALJ should not have discredited them on this ground. (Pl's Mem. Supp. at 10.) Plaintiff also points to specific instances where the record supports her contentions. (Pl's Mem. Supp. 11-13.)

But, the ALJ was entitled to give less weight to portions of the state agency consultants' opinions because he reasonably concluded they were unsupported by substantial evidence. And, "an ALJ may refuse to credit some, but not all, of a physician's opinion if those discredited portions suffer from these deficiencies." *Stoots v. Astrue*, 2012 WL 4717575, at *8 (E.D. Va. Oct. 1, 2012) (finding that the ALJ did not err in granting less than controlling weight to portions of treating physician's opinion). The undersigned may not re-weigh evidence, especially where, as here, the ALJ's decision is supported by the substantial evidence, which he cites in his opinion using evidence throughout the record. *See Mastro*, 270 F.3d at 176. The ALJ reasonably

concluded that Plaintiff's daily activities - which include driving, playing cell phone games, coloring, dressing and caring for herself, laundry, online banking and grocery shopping, and walking her dogs – were inconsistent with the doctors' stated manipulative limitations. (R. at 40, 50-54, 80, 92-94, 100-04.) Therefore, the ALJ's decision to give the state agency psychologists' opinions as to Plaintiff's manipulative limitations partial weight was proper under the applicable deferential standard.

Accordingly, the ALJ's RFC was supported by the substantial weight of the evidence and Plaintiff is not entitled to reversal or reconsideration under § 405(g). Moreover, Plaintiff does not cite a single source to support her contention that she is unable to work. Both state agency psychologist reports, on which Plaintiff bases her motion for summary judgment, indicate that she is able to work with limitations similar to those set forth in the ALJ's RFC assessment. The RFC assessment reflects the fact that Plaintiff will have difficulties in full-time employment, as evidenced by the record.[3] Still, the ALJ's ultimate conclusion that Plaintiff's RFC does not render her disabled is supported by the substantial weight of the evidence, and this Court has no power to reconsider the evidence under the substantial evidence standard.

### C. The ALJ Properly Considered the Medical Opinions Pertaining to Plaintiff's Absenteeism

Plaintiff next contends that the ALJ did not properly consider treating psychiatrist Dr. Kristie Mitchell's and treating rheumatologist Dr. Mala Mehta's opinions that she would be absent from work more than three times a month. (Pl's Mem. Supp. at 13-19.) Defendant argues that the ALJ properly applied the controlling weight test to Dr. Mehta's and Dr. Mitchell's opinions. The undersigned agrees with Defendant.

---

[3] Contrary to Plaintiff's assertion, ALJ Krasnow does not suggest that Plaintiff "has no issues with manipulation." (Reply at 3.)

11

i. <u>The Controlling Weight Test</u>

A treating source medical opinion as to the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with other substantial evidence in the case record.* 20 C.F.R. § 404.1527(c)(2). Furthermore, if a treating source is not entitled to controlling weight, the ALJ is required to "give good reasons" for the weight given in his decision. *Id.* Still, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies, or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (internal citations omitted). Ultimately, the ALJ "holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Id.* at 267-68 (quoting *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)); *see also Craig v. Chater*, 76 F.3d 585, 690 (4th Cir. 1996) ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."). Given this deferential standard, Plaintiff's argument is without merit.

Here, the ALJ gave "partial weight" to Dr. Mitchell's opinion and "little weight" to Dr. Mehta's. Of Dr. Mitchell's reports, the ALJ explained that:

> The undersigned gives partial weight to the opinion of the claimant's psychiatrist. In December 2015, she completed a medical source statement (MSS), indicating mostly fair abilities to make mental adjustments but added that the claimant would be absent from work more than three times per month. The undersigned gives greater weight to the assessment of fair to good mental abilities because of the sporadic treating relationship with the claimant, but the undersigned gives lesser weight to the remainder of her assessment. In particular, the claimant has had largely normal psychiatric review of systems and examinations despite a lack of ongoing formal mental health treatment. Drug screens revealed heroin metabolites but there is no evidence of frequent or intense medical deterioration to support any absenteeism limitation.

(R. at 25). And, in regard to Dr. Mehta's opinions, the ALJ stated:

> The undersigned gives little weight to the opinions of the claimant's rheumatologist at Exhibits 5F, 7F, 9F. In November 2016, the rheumatologist [wrote] a MSS, noting that the claimant could perform light work with additional sitting standing limitations, frequently manipulatives, occasional postural limitations, more than three absences per month, and significant rest breaks. As noted above, there is no evidence of frequent or intense medical deterioration to support any absenteeism limitation. The rheumatologist also wrote that the claimant could not participate in employment for 12 months in November 2016 and again July 2017. The undersigned gives greater weight to her assessment of lifting, carrying, and postural limitations because of her long-term treating relationship with the claimant and expertise in the area of rheumatology. However, the undersigned gives lesser weight to the rest of her assessments. The rheumatologist's own objective findings support that the claimant is less limited than opined here. For example, the claimant's normal mobility and lower extremity strength show that she is able to perform the sitting and standing requirements of light work. Additionally, the claimant has had many normal neurovascular signs demonstrated wide-ranging manipulative abilities within activities of daily living such that only the above are appropriate. Moreover, the claimant has required no intensive medical treatment and has shown no inattentiveness or in-alertness on examination to warrant any additional absenteeism or off task limitations.

(R. at 25-26.)

The ALJ therefore applied the controlling weight test because he considered the consistency of the treating psychiatrist's and rheumatologist's opinions with their own opinions and with the substantial evidence in the record, considered their longitudinal relationship with Plaintiff, and fully explained his good reasons for according less than controlling weight to Dr. Mitchell's and Dr. Mehta's records.

###### ii.     The ALJ's Good Reasons

Nevertheless, Plaintiff alleges that "the ALJ did not provide the requisite good reasons supported by substantial evidence for discrediting the treating source opinions of Dr. Mehta and Dr. Mitchell." (Pl's Mem. Supp. at 18.) When a treating source is not entitled to controlling weight, the ALJ must apply a number of factors and "give good reasons…for the weight" the ALJ gives to the treating physician. 20 C.F.R. § 404.1257(c)(2). Some factors the ALJ may use

13

in determining whether to give a treating physician controlling weight include the length of the treatment relationship, supportability, consistency, and "any factors…which tend to support or contradict the medical opinion." 20 C.F.R. § 404.1257(c)(1)-(6). An ALJ need not expressly mention the statutory factors in order to provide good reasons for according less than controlling weight to a treating physician. *See Burch v. Apfel*, 9 F. App'x 255, 259 (4th Cir. 2001) (finding that the ALJ provided good reasons for according less than controlling weight to Plaintiff's treating physician where he discussed the treating relationship, doctor's progress notes, specialization, and inconsistencies with the record).

Here, ALJ Krasnow clearly outlined why he gave Dr. Mitchell's and Dr. Mehta's absenteeism opinions little weight: because they were inconsistent with these doctors' own findings and the record as a whole. The undersigned will address Dr. Mitchell's and Dr. Mehta's particular findings below.

    a.    <u>Dr. Mitchell, Psychiatrist:</u>

Dr. Mitchell submitted a medical check box medical assessment in December 2015. (R. at 518-23.) Dr. Mitchell checked that Plaintiff had a fair ability to follow work rules, relate to co-workers, interact with supervisors, maintain concentration/focus, adjust to a job, and make personal-social adjustments. (R. at 518-19.) Additionally, Plaintiff had a good ability use judgment and function independently, although she would have only a poor ability to deal with the public and work stresses. (R. at 518-19.) The only limitations or clinical findings Dr. Mitchell reported were that Plaintiff had a poor memory and poor emotional regulation. (R. at 519.) Dr. Mitchell also concluded that Plaintiff could manage benefits in her own interest. (R. at 520.) Finally, Dr. Mitchell checked that, on average, she anticipated Plaintiff to miss work "more than three times a month." (R. at 520.)

Despite Dr. Mitchell's overall positive prognosis on the first form, on the next check box form from December 2015, Dr. Mitchell checked various depressive symptoms and anxiety disorders from which Plaintiff suffered. (R. at 521-523.) Offering little explanation, Dr. Mitchell then checked that Plaintiff exhibited marked restrictions of daily living, difficulties in maintain social functioning, deficiencies in concentration, and repeated episodes of deterioration in work-like settings.[4] (R. at 523.) On this second form, Dr. Mitchell again checked that Plaintiff would miss work more than three days a month. (R. at 523.)

Looking at Dr. Mitchell's treatment notes, she stated in August through October 2015 and June through October 2017 that Plaintiff's thought process was "linear, logical," her thought content was "relevant to circumstances," her reality testing was intact, her intellectual functions and memory were mostly good with some impairment to short-term memory, and her insight and judgment were fair-good. (R. at 532, 540, 597, 605, 659.)

Based upon this evidence, the undersigned agrees with Defendant that the ALJ reasonably concluded that Dr. Mitchell's own findings do not support her absenteeism assertions.

      b.    <u>Dr. Mehta, Rheumatologist:</u>

Dr. Mehta completed a medical source statement in November 2016. (R. at 525-28.) Using check boxes, Dr. Mehta indicated that Plaintiff could not sit upright for six of eight hours in a work setting. (R. at 526.) But, Dr. Mehta also found that Plaintiff could frequently reach overhead and in all directions, handle (gross manipulation), finger (fine manipulation), feel with skin receptors, and push/pull controls. (R. at 527.) And, Plaintiff could occasionally stoop, bend,

---

[4] Plaintiff argues that the ALJ erred in discrediting this opinion because "these symptoms can also lead to an individual not being able to show up to work consistently." (Pl's Mem. Supp. at 15.) The applicable standard here, however, is not whether these symptoms *could* lead to absenteeism, but whether there is "such relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The undersigned concludes there is such relevant evidence.

squat, kneel, and turn her head. (R. at 527.) Instead of responding to "what degree can the patient tolerate work stress[,]" Dr. Mehta wrote "please ask psychiatry MD[.]" Nevertheless, Dr. Mehta opined in the same statement that Plaintiff would miss work more than three times a month "[at] this rate, until her anxiety is better." (R. at 528.)

Dr. Mehta filled out another check box form in March and July 2017. (R. at 609-10, 619, 621.) She opined that Plaintiff would not be able to work for at least twelve months due to CREST syndrome, depression, anxiety, and chronic pain syndrome. (R. at *id.*) Next to "physical limitations" Dr. Mehta wrote that Plaintiff experienced limb and joint pain. (R. at 610, 620.) Next to "mental health limitations" Dr. Mehta wrote "major depressive disorder, anxiety disorder (several)." (R. at *id.*) The form was otherwise devoid of details or explanations.

Turning to Dr. Mehta's treatment notes, she noted myalgias and arthralgias but no swollen joints in April 2015. (R. at 466.) She found the same in November 2018, though she also noted that Plaintiff was "tender to even light touch" in most areas. (R. at 779-80.) Beyond these symptoms, Dr. Mehta's treatment notes do not tend to support her opinion that Plaintiff would be excessively absent from work.

Considering Dr. Mehta's opinion that Plaintiff would miss work more than three times a month with her lack of explanation on the check box forms and the lack of support from her own treatment notes, the undersigned concludes that the ALJ did not err in assigning partial weight to her opinions.

    c.    <u>The Remaining Record:</u>

Finally, Plaintiff argues that the absenteeism opinions are consist with the substantial evidence in the record. (Pl's Mem. Supp. at 17-19.) Specifically, Plaintiff points to Dr. Darlene L. Jones' records noting Plaintiff's joint pain and hand therapy. (R. at 444-454.) Dr. Jones

recorded in June 2015 that Plaintiff claimed she was unable to work because of pain in her hands and knees. (R. at 445.) Dr. Jones also noted that Plaintiff had CREST syndrome and that her hands were painful to the touch. (R. at 445.) Additionally, Dr. Mahsa Tehrani diagnosed Plaintiff with systematic sclerosis, fibromyalgia, and joint pain in May 2017. (R. at 611-15.) Finally, Dr. Emily Bergman completed a "Clinical Assessment of Pain" form in September 2017, on which she acknowledged that Plaintiff's pain would be distracting at work, but that medication will aid in reducing her pain. (R. at 621-22.) In February 2019, Dr. Bergman's treatment notes show that Plaintiff was following up regarding her persisting chronic pain. (R. at 810-14.)

Plaintiff is correct that "[t]he record documents ongoing issues with pain," but the ALJ does not dispute this. (Pl's Mem. Supp. 18.) According to Plaintiff, her "significant levels of pain could certainly warrant issues with excessive absenteeism." (Pl's Mem. Supp. 18.) As the undersigned explained above, however, this is not enough for the undersigned to find that the ALJ erred. Although Plaintiff may suffer from significant joint pain, the substantial evidence in the record, taken as a whole, reasonably supports the ALJ's decision to give only partial weight to a small portion of Dr. Mitchell's and Dr. Mehta's checkbox opinions.

In sum, the undersigned finds that ALJ Krasnow provided good reasons for according Dr. Mitchell's and Dr. Mehta's absenteeism opinions less than controlling weight.

## V. R<small>ECOMMENDATION</small>

For the reasons set forth above, the undersigned U.S. Magistrate Judge recommends that the Court enter an order (1) granting Defendant's cross motion for summary judgment (Dkt. 18); (2) denying Plaintiff's motion for summary judgment (Dkt. 15); and (3) affirming the final decision of Defendant.

17

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to counsel of record.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

June 3, 2021
Alexandria, Virginia